ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| ASOCIACIÓN DE TITULARES DE MADEIRA ROW HOUSES, INC.<br><br>OMAR SAFAR HALABI<br><br>Apelantes<br><br>v.<br><br>MMG PUERTO RICO, LLC; RUBÉN SERGIO SOLANOT QUIROGA; CASA MADEIRA, LLC; GEORGE AZIZ; PATRICK BRIAN HORSMAN; FIDELITY BUSINESS, CORP.; CARLOS NOEL BERRÍOS CASILLAS; JASON STONE<br><br>Apelados | KLAN202500240 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV11094<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de julio de 2025.

Compareció el Sr. Omar Safar Halabi (en adelante, "señor Safar Halabi" o "apelante") mediante recurso de apelación presentado el 21 de marzo de 2025. Nos solicitó la revocación de la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "foro primario"), el 10 de enero de 2025 y notificada en igual fecha. En ese dictamen, el foro primario desestimó la *demanda contra tercero* en su totalidad contra el Sr. Carlos Noel Berríos Casillas, el Sr. Rubén Sergio Solanot Quiroga y el Sr. George Aziz; y parcialmente contra el Sr. Patrick Brian Horsman, el Sr. Jason Stone y la compañía Fidelity Business, Corp.

---

[1] Mediante la Orden Administrativa DJ 2024-062C emitida el 6 de mayo de 2025, se enmendó la constitución de los paneles del Tribunal de Apelaciones.

Por los fundamentos que expondremos a continuación, se **confirma** la *Sentencia Parcial* apelada.

**-I-**

El 6 de febrero de 2023, la Asociación de Titulares de Madeira Row Houses, Inc. (en adelante, "Asociación de Titulares") presentó *Demanda Enmendada*[2] sobre cobro de dinero contra el señor Safar Halabi. En síntesis, alegó que el señor Safar Halabi —como propietario del inmueble 2 ubicado en la Urbanización Madeira Row Houses en San Juan, Puerto Rico— adeuda la cantidad principal de $17,483.00 por conceptos de cuotas de mantenimiento, derramas, más intereses, gastos y honorarios de abogados.

El 19 de julio de 2023, el señor Safar Halabi presentó *Contestación a Demanda Enmendada, Reconvención y Demanda contra Tercero.*[3] Allí alegó que los miembros de la Junta de Directores de la Asociación de Titulares son los titulares de los seis (6) inmuebles segregados —construidos en hileras de tres (3) niveles— ubicados en la Urbanización Madeira Row Houses, a saber: (i) el Sr. Rubén Sergio Solanot Quiroga (en adelante, "señor Solanot Quiroga"), propietario del inmueble 1; (ii) la compañía Casa Madeira, LLC, propietaria del inmueble 3 y cuyo agente residente es el Sr. George Aziz (en adelante, "señor Aziz"); (iii) el Sr. Patrick Brian Horsman (en adelante, "Horsman"), propietario del inmueble 4; (iv) la compañía Fidelity Business, Corp., propietaria del inmueble 5 y cuyo vicepresidente es el Sr. Carlos Noel Berríos Casillas (en adelante, "señor Berríos Casillas"); (v) el Sr. Jason Stone (en adelante, "señor Stone"), propietario del inmueble 6; y (vi) la compañía MMG Puerto Rico, LLC, agente administrador de la Asociación de Titulares. En cuanto a la Demanda contra Tercero, presentó varias causas de acción, a saber: (1) **designación de un administrador judicial**; (2) **daños por**

---

[2] Apéndice del apelante, anejo 3, págs. 28-43.
[3] Íd., anejo 5, págs. 45-68.

**interferencia torticera** en contra de la compañía MMG Puerto Rico, LLC; (3) **incumplimiento de contrato** por parte del señor Solanot Quiroga, el señor Horsman, el señor Stone, el señor Aziz, el señor Berríos Casillas y las compañías: Casa Madeira, LLC y Fidelity Business, Corp.; y (4) **daños por construcción ilegal sobre la servidumbre de vigilancia** causada por el señor Horsman, el señor Stone, el señor Aziz, el señor Berríos Casillas y las compañías: Casa Madeira, LLC y Fidelity Business, Corp.

Tras varios trámites procesales, el señor Solanot Quiroga[4], el señor Berríos Casillas[5], el señor Horsman[6] y el señor Aziz[7] —aunque en fechas distintas y de manera individual— presentaron *Moción de Desestimación de Demanda contra Tercero*. En síntesis, alegaron que la demanda contra tercero no contiene alegaciones en sus caracteres personales por las cuales pudiera justificarse algún remedio, sino que contiene alegaciones exclusivas a sus funciones y actuaciones como miembros de la Junta de Directores de la Asociación de Titulares. Por tanto, adujeron que procede la desestimación de la demanda contra tercero incoada en su contra bajo la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), toda vez que la Asociación de Titulares tiene capacidad para demandar y ser demandada.

En respuesta, el señor Safar Halabi presentó su *Oposición a Solicitudes de Desestimación [SUMAC, entradas núm. 76, 81, 109, 110]* en la cual alegó que no procede la desestimación solicitada.[8] Argumentó que la demanda contra tercero es susceptible de ser enmendada, ya que no han presentado ninguna alegación responsiva. Agregó que todos los terceros demandados fueron emplazados conforme a derecho y ninguno expresó alguna reserva de jurisdicción. Además, adujo que existen dos (2) escrituras públicas sobre

---

[4] *Íd.,* anejo 13, págs. 138-145.
[5] *Íd.,* anejo 14, págs. 156-164.
[6] *Íd.,* anejo 15, págs. 165-172.
[7] *Íd.,* anejo 16, págs. 173-181.
[8] *Íd.,* anejo 17, págs. 182-189.

condiciones restrictivas que vinculan a la Asociación de Titulares y todos los titulares de los seis (6) inmuebles que ubican en la Urbanización Madeira Row Houses. Reafirmó, a su vez, que los terceros demandados son los titulares de los mencionados inmuebles y ocupan posiciones en la Asociación de Titulares. Arguyó que los terceros demandados —por sí o a través de sus representantes— incumplieron con las dos (2) escrituras públicas al aprobar aumentos de cuotas y construcciones de forma *ultra vires*. Además, señaló que se atribuyeron créditos ilegalmente con el fin de burlar la Sentencia dictada en el caso SJ2020CV03944. Por último, argumentó lo siguiente:

> Ni la existencia de una entidad jurídica, ni la cualidad de accionista o miembro de una corporación sin fines de lucro que pueda tener una persona lo eximen de [las] consecuencias de sus propios actos, de la responsabilidad de cumplir con las relaciones contractuales a los que se obligó, o de la responsabilidad que pueda enfrentar dicha persona por su interferencia torticera con las relaciones contractuales habidas entre terceros.[9]

Asimismo, en fechas distintas y por separado, el señor Stone[10] y la compañía Fidelity Business, Corp.[11] presentaron *Moción de Desestimación contra Tercero*. Allí, en síntesis, adujeron que la demanda contra tercero contiene alegaciones relacionadas a sus roles como miembros de la Junta de Directores de la Asociación de Titulares y propietarios de los inmuebles 5 y 6, respectivamente. Añadieron que no hay alegaciones en su contra por actos de los cuales pudiera justificarse algún remedio. Por tanto, solicitaron la desestimación de la demanda contra tercero incoada en su contra bajo la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), debido a que la Asociación de Titulares tiene capacidad para demandar y ser demandada por sí misma.

---

[9] *Íd.,* anejo 17, pág. 188.
[10] *Íd.,* anejo 18, págs. 190-197.
[11] *Íd.,* anejo 22, págs. 222-229.

En consecuencia, el señor Safar Halabi presentó su oposición a las mociones de desestimación respectivamente.[12] Mediante esta, reafirmó todos sus argumentos anteriores. Añadió que, tanto el señor Stone como la compañía Fidelity Business Corp. —a través de su representante, el señor Berríos Casillas— votaron a favor de aumentar las cuotas y recibieron un crédito al que no tenían derecho en detrimento de los mejores intereses de la Asociación de Titulares.

Ante esto, el 10 de enero de 2025, el foro primario emitió y notificó *Sentencia Parcial* mediante la cual hizo constar que se celebró una vista argumentativa para atender las referidas solicitudes de desestimación. Al emitir su dictamen, el foro primario desestimó algunas causas de acción y sostuvo otras. Por un lado, el foro primario estableció que las primeras tres causas de acción de la demanda contra tercero versan sobre una acción derivativa, interferencia torticera e incumplimiento contractual; y concluyó que ninguna de ellas justifica la concesión de algún remedio. Determinó, además, que los apelados habían sido traídos al pleito, en relación con las primeras tres causas de acción, por sus actuaciones como miembros de la Asociación de Titulares. Así, el foro primario desestimó la primera, segunda y tercera causa de acción de acción de la demanda contra tercero contra el señor Berríos Casillas, el señor Solanot Quiroga, el señor Aziz y el señor Horsman, el señor Stone y la compañía Fidelity Business, Corp.

De otro lado, el foro primario determinó que la cuarta causa de acción de la demanda contra tercero versa sobre los daños por construcción ilegal realizada por la compañía Casa Madeira, LLC, el señor Horsman, el señor Stone y la compañía Fidelity Business, Corp. El foro primario entendió que tal causa de acción no fue presentada por actuaciones realizadas como miembros de la Asociación de

---

[12] *Íd.,* anejo 21, págs. 215-221; anejo 23, págs. 230-237.

Titulares, sino por sus acciones como titulares de sus respectivos inmuebles. Así, pues, concluyó que no procedía la desestimación de la cuarta causa de acción de la demanda contra tercero respecto al señor Horsman, el señor Stone y la compañía Fidelity Business Corp.[13]

En desacuerdo, el 26 de enero de 2025, el señor Stone, el señor Horsman y la compañía Fidelity Business Corp. presentaron —de manera individual— sus respectivas solicitudes de reconsideración.[14] En síntesis, alegaron que la cuarta causa de acción de la demanda contra tercero incoado en su contra es una alegación vaga, imprecisa y especulativa. Por tal razón, solicitaron su desestimación y la imposición de costas y honorarios de abogados.

En contraposición, el 18 de febrero de 2025, el señor Safar Halabi presentó su *Oposición a Reconsideraciones*.[15] Adujo que la demanda contra tercero contiene alegaciones que cumplen con la Regla 6.1 de Procedimiento Civil, *supra* y, a base de ello, sostuvo que tiene derecho a remedios. Además, alegó que las solicitudes de reconsideraciones contienen meros argumentos sin evidencia e inducen a error al tribunal al tergiversar el estándar de evaluación de una moción de desestimación.

Así las cosas, el 19 de febrero de 2025, el foro primario emitió y notificó *Resolución Interlocutoria* en la cual declaró *no ha lugar* las solicitudes de reconsideración.[16]

Inconforme con lo anteriormente resuelto, el 21 de marzo de 2025, el señor Safar Halabi acudió ante este Tribunal mediante el recurso de epígrafe en el cual señaló los errores siguientes:

> PRIMER SEÑALAMIENTO DE ERROR: Erró el TPI al desestimar las reclamaciones de la demanda de violación contractual a favor de Fidelity, el Sr. Horsman y el Sr. Stone,

---

[13] En cuanto a la compañía Casa Madeira, LLC, el foro primario aclaró en una nota al calce que no solicitó desestimación alguna.

[14] *Íd.,* anejo 25, págs. 253-256; anejo 26, págs. 257-260; anejo 27, págs. 261-264.

[15] *Íd.,* anejo 29, págs. 265-272.

[16] *Íd.,* anejo 30, págs. 273-374.

el Sr. Berríos, el Sr. Solanot y el Sr. Aziz. Esto pues las actuaciones de estos como miembros de la Asociación de Titulares de Madeira Row Houses constituyen negligencia crasa al ignorar por completo las condiciones restrictivas en las escrituras que obligan a la Asociación y a todos los titulares.

SEGUNDO SEÑALAMIENTO DE ERROR: Erró el TPI al no aplicar correctamente el estándar de evaluación de una moción de desestimación al no hacer inferencia alguna favorable al Sr. Halabi y en vez inferir en su contra que había alegado fraude y aplicar esa inferencia en su contra al requerir un estándar para las alegaciones de la demanda contra terceros más altos cuando la demanda contra terceros no contiene mención alguna de fraude.

Por su parte, el 21 de abril de 2024, los apelados presentaron su *Alegato en Oposición a Apelación*.

Con el beneficio de la comparecencia escrita de todas las partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Regla 10.2 de Procedimiento Civil**

La Regla 10.2 de Procedimiento Civil autoriza al demandado -ya sea en una demanda, reconvención, demanda contra coparte o **demanda contra tercero**- a presentar una moción de desestimación debidamente fundamentada a esos fines. 32 LPRA Ap. V, R. 10.2. En particular, la precitada regla reconoce los siguientes fundamentos: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio o (6) dejar de acumular una parte indispensable. *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022).

En síntesis, el demandado que formula una moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, hace el siguiente planteamiento:

"**Yo acepto para los propósitos de mi moción de desestimación que todo lo que se dicte en esta demanda**

**es cierto, pero aun así**, **no aduce una reclamación que justifique la concesión de un remedio**, o no se ha único una parte indispensable, o el tribunal no tiene jurisdiccion, etc." Es decir, a los efectos de considerar esta moción no se ponen en duda los hechos aseverados porque se ataca por un vicio intrínseco de la demanda o del proceso seguido.

R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., Lexis Nexis, 2010, pág. 269 (énfasis suplido).

Como regla general, el tribunal al momento de adjudicar una moción desestimación bajo la precitada disposición legal, lo hace a base de lo expuesto en la alegación contra la cual se dirige. *Íd.*

En relación con el quinto inciso de esta Regla, sobre el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, el Tribunal Supremo ha expuesto lo siguiente:

> Al resolver una moción de desestimación por este fundamento, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. Ante una moción de desestimación, las alegaciones hechas en la demanda hay que interpretarlas de forma conjunta, liberal y lo más favorable posible para la parte demandante. La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar. Debemos considerar, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". Tampoco procede la desestimación de una demanda si es susceptible de ser enmendada.

*Colón v. Lotería*, 167 DPR 625, 649 (2006) (notas al calce omitidas).

Por último, la Regla 10.2 de las de Procedimiento Civil, *supra*, puntualiza sobre su quinto inciso que:

> Si en una moción en que se formula la defensa número (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción **deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final**, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla.

*Íd.* (Énfasis suplido).

Es decir, el promovente de una moción bajo el quinto inciso de la Regla 10.2 de las de Procedimiento Civil, *supra*, que impugne o derrote la veracidad de los hechos deberá cumplir con todos los

requisitos de la solicitud de sentencia sumaria para que esta sea considerada por el tribunal. *Íd.*, R. 10.2 y R. 36.3; véase *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

## B. Corporaciones

La Ley Núm. 164-2009, según enmendada, conocida como Ley General de Corporaciones, 14 LPRA sec. 3501 *et seq.* (en adelante, "Ley de Corporaciones"), tiene la finalidad de agilizar la gestión corporativa y flexibilizar las operaciones a las puedan dedicarse las corporaciones en Puerto Rico. De manera que "es el estatuto que rige la existencia y vida jurídica de las corporaciones privadas en nuestra jurisdicción". *Colón Vázquez v. Báez Pérez*, 2024 TSPR 104, 214 DPR ___ (2024). El precitado estatuto crea una ficción jurídica mediante el cual reconoce a las corporaciones como entidades con personalidad jurídica propia, distinta e independiente a las de sus accionistas, directores y oficiales. *Rivera Sanfeliz et al. v. Jta. Dir. Firstbank*, 193 DPR 38, 49 (2015); *Multinational Ins. v. Benítez y otros*, 193 DPR 67, 76 (2015). En particular, nuestro Tribunal Supremo ha expresado que:

> La figura de la corporación facilita el desarrollo de empresas porque se le reconoce una personalidad jurídica distinta a la de sus dueños o miembros, quienes por lo general no responderán con sus bienes personales por los actos de la corporación, sino hasta el monto de su inversión. C.E. Díaz Olivo, *Corporaciones*, San Juan, Publicaciones Puertorriqueñas, 2005, pág. 11.

*Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011).

Cónsono con lo anterior, el Artículo 1.05 de la Ley de Corporaciones establece que la personalidad jurídica de una corporación comienza tras la emisión del certificado de incorporación por el Secretario de Estado. 14 LPRA sec. 3505. "Es a partir de ese momento que nace la corporación de *jure* y se reconoce y oficializa el privilegio de la responsabilidad limitada de los accionistas." *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 87 (2023) (citando a C.E. Díaz Olivo, *Corporaciones: tratado sobre derecho corporativo*, 2.ª ed.

rev., Colombia, Ed. Nomos, 2022, pág. 103 esc. 119). Esto es, "para que una corporación adquiera personalidad jurídica no es suficiente que someta el certificado de incorporación y pague los derechos establecidos por ley, sino que es indispensable que se le expida su certificado de incorporación". *Eagle Security Police, Inc. v. Dorado*, supra, pág. 86.

Así pues, luego de la emisión del certificado de incorporación, la corporación queda facultada para ejercer los derechos y poderes conferidos por los Artículos 2.01 y 2.02 de la Ley de Corporaciones. 14 LPRA secs. 3521 y 3522. Entre los poderes específicos para los cuales quedan facultadas las corporaciones debidamente constituidas se encuentras los siguientes:

[…]

**B.** Demandar y ser demandada bajo su nombre corporativo en cualquier Tribunal y participar en cualquier procedimiento judicial, administrativo, de arbitraje o de cualquier otro género;

[…]

**D.** Comprar, recibir, poseer, arrendar, adquirir o ceder, en cualquier modo o forma, bienes muebles o inmuebles o cualquier otro interés en los mismos, dondequiera que estén sitos, y vender, arrendar, permutar o en cualquier otra forma transferir o gravar, total o parcialmente, su propiedad y activos, o cualquier interés en los mismos, dondequiera que estén sitos;

**E.** Nombrar a los oficiales y agentes que requiera el negocio de la corporación y asignarles remuneración apropiada;

[…]

**H.** Llevar a cabo sus negocios y operaciones, tener una o más oficinas, y ejercer sus poderes dentro o fuera de la jurisdicción territorial del Estado Libre Asociado de Puerto Rico;

[…]

**Q.** Participar con otros en cualquier corporación, sociedad, asociación, empresa común o de cualquier otra clase, en cualquier transacción, negocio, arreglo o acuerdo para los cuales la corporación participante tenga facultad para llevar a cabo por sí misma, incluya o no dicha participación el compartir con otros o delegar en otros el control corporativo;

14 LPRA sec. 3522.

En cuanto al esquema corporativo, el Alto Foro ha explicado que se compone de dos partes: (1) por los accionistas en calidad de dueños y (2) por la administración interna de la entidad, la cual recae sobre sus directores y oficiales. *Rivera Sanfeliz et al. v. Jta. Dir. Firstbank,* supra, pág. 50. Asimismo, el Tribunal Supremo ha establecido que:

> A pesar de que los accionistas de una corporación son los propietarios de la misma, de ordinario estos no la dirigen ni la administran. Díaz Olivo, *op. cit.,* pág. 12. En cambio, los accionistas "seleccionan a un grupo de personas que se conocen como directores, a quienes les encomendarán la administración de la entidad". Íd. Los directores, a su vez, son los encargados de establecer la política de la empresa y de designar a un grupo de personas que se les denomina oficiales, siendo estos últimos los llamados a ocuparse de los asuntos diarios de la corporación. Íd.

En consecuencia, el Artículo 2.03 de la Ley de Corporaciones instituye sobre los directores y oficiales el deber de fiducia frente a la entidad y sus accionistas. 14 LPRA sec. 3523; *Rivera Sanfeliz et al. v. Jta. Dir. Firstbank,* supra, págs. 51-52; *Multinational Ins. v. Benítez y otros,* supra, págs. 77-78. Esto es, los directores y oficiales como administradores de la corporación, deben ejercer sus poderes corporativos y gerenciales por los mejores intereses de la entidad y sus accionistas. *Íd.*

En relación con los deberes de fiducia, la propia Ley de Corporaciones reconoce que estos se dividen en dos: (1) el deber de diligencia y (2) el deber de lealtad. 14 LPRA secs. 3563 y 3564. El incumplimiento con tales deberes inherentes a las funciones de los directores y oficiales no conllevan responsabilidad personal sobre ellos, salvo medie negligencia crasa. *Rivera Sanfeliz et al. v. Jta. Dir. Firstbank,* supra, págs. 53-54. No obstante, tal responsabilidad se produce solo frente a la corporación y ello está sujeto a que, esta última, sufra algún daño como consecuencia el incumplimiento de las obligaciones y deberes de los administradores. *Íd.*

Discutido el derecho aplicable, este Tribunal se encuentra en posición para disponer del recurso de epígrafe.

**-III-**

En el caso de epígrafe, el apelante alegó que el foro primario erró al desestimar la demanda contra tercero y no aplicó correctamente el estándar aplicable bajo la Regla 10.2(5) de Procedimiento Civil, *supra.* Argumentó, además, que las alegaciones de la demanda contra tercera configuran la negligencia crasa cometida por apelados. En particular, señalaron que las alegaciones demuestran que los apelados, como miembros de la Junta de Directores de la Asociación de Titulares, no ejercieron cuidado alguno e ignoraron sus obligaciones.

Por su parte, los apelados arguyen que la demanda contra tercero contiene alegaciones exclusivas sobre sus roles como alegados propietarios de los inmuebles ubicados en la Urbanización Madeira Row Houses y como miembros de la Junta de Directores de la Asociación de Titulares. A su vez, sostienen que el apelante pretende enmendar sus alegaciones a través del recurso de epígrafe, ya que ninguna de las alegaciones de la demanda contra tercero contiene lenguaje alguno sobre negligencia crasa. Por tanto, argumentaron que el foro primario actuó correctamente al desestimar totalmente respecto al señor Solanot Quiroga, el señor Aziz y el señor Berríos Casillas. No obstante, alegaron que procede la modificación de la *Sentencia* apelada para desestimar la cuarta causa de acción contra el señor Horsman, el señor Stone y la compañía Fidelity Business, Corp.

Adelantamos que, luego de una minuciosa evaluación del expediente, determinamos que no quedó demostrado que el foro primario haya actuado mediante error manifiesto, pasión, perjuicio o parcialidad al realizar su dictamen. Consecuentemente, no vemos motivos para intervenir con la *Sentencia* apelada. Nos explicamos.

El caso ante nuestra consideración tuvo su génesis cuando una corporación debidamente incorporada llamada Asociación de

Titulares, presentó una reclamación contra el apelante. Este último, contestó la mencionada demanda y presentó, a su vez, una demanda contra tercero contra los apelados. Allí, alegó que los apelados eran: (1) los titulares de ciertos inmuebles ubicados en la Urbanización Madeira Row Houses y (2) miembros de la Junta de Directores de la Asociación de Titulares. Arguyó que los apelados, como miembros de la Junta de Directores de la Asociación de Titulares, tomaron decisiones relacionadas a cuotas de mantenimiento y construcciones *ultra vires,* entre otros. Por lo cual, solicitó como sigue: (1) la designación de un administrador judicial a la Asociación de Titulares, (2) daños por interferencia torciera, (3) incumplimiento de contrato y (4) daños por construcción *ultra vires*.

Según explicamos en el acápite I, el foro primario sostuvo la cuarta causa de acción de la demanda contra tercero, mientras que desestimó las restantes causas de acción. No obstante, el apelante nos planteó que el foro primario erró al desestimar la primera, segunda y tercera causa de acción de la demanda contra tercero. Por lo cual, procedemos a revisar ese análisis del foro primario. Veamos.

En su análisis, el foro primario determinó que las primeras tres causas de acción de la demanda contra tercero no justifican la concesión de algún remedio. Además, concluyó que los apelados habían sido traídos al pleito, en relación con las primeras tres causas de acción, por sus actuaciones como miembros de la Junta de Directores de la Asociación de Titulares y expresó como sigue:

> [...] no surge del expediente, hechos concretos que expongan la intención de defraudar a la Asociación o a Halabi. Meras alegaciones generalizadas no son suficientes. Por lo tanto, no se cumplió con establecer que los terceros demandados actuaron con negligencia crasa para imponer responsabilidad a nivel personal a éstos. Como tampoco se cumplió con el estándar requerido por la Regla 7.2 de Procedimiento Civil, *supra.*

De un examen integral de la demanda contra tercero, coincidimos con el foro primario, ya que surge con meridiana claridad que la reclamación del apelante en contra de los apelados

concierne, en síntesis, a asuntos de estricta naturaleza contractual y fiduciaria de la corporación. Nótese que, las alegaciones núm. 14, 15, 16, 18, 19, 20, 21, 23 y 24 la demanda contra tercero señala a los apelados como miembros de la Junta de Directores de la Asociación de Titulares[17] y, en particular, el apelante alegó lo siguiente:

> 29. El 19 de septiembre de 2005, se creó e inscribió la Asociación de Titulares de Madeira Row Houses, Inc., una corporación sin fines de lucro con los poderes y las responsabilidades que se exponen en la Escritura 26 y conforme a cuyos términos deben gobernarse la asociación y sus miembros.
> 30. Los miembros de la Asociación de Titulares de Madeira Row Houses, Inc. son los titulares de las 6 fincas segregadas de la que se describe en el expositivo primero de la Escritura 26, que a su vez se formó por agrupación de las fincas #10,649 y #16,097 inscritas en el Registro de la Propiedad de Puerto Rico, Sección primera de San Juan.
> [...]
> 32. La Escritura 26 es un contrato que vincula en todo momento a los miembros de la Asociación de Titulares de Madeira Row Houses, Inc.
>
> .    .    .    .    .    .    .    .
>
> 106. De forma individual y colectiva, y en ocasiones actuando en común acuerdo, el Sr. Rubén Sergio Solanot Quiroga, el Sr. Patrick Brian Horsman, el Sr. Jason Stone, el Sr. Carlos Noel Berríos Casillas, el Sr. George Azih, Fidelity Business Corp. y Casa Madeira, LLC, violaron las disposiciones contractuales establecidas mediante la Escritura 26 y la Escritura 17, incumpliendo estos contratos entre los miembros de la Asociación de Titulares de Madeira Row Houses, Inc.[18]

Por lo tanto, en la medida que no hay alegación alguna por actos realizados por los apelados en su carácter personal, procedía la desestimación de la primera, segunda y tercera causa de acción de acción de la demanda contra tercero contra los apelados.

La demanda contra tercero contiene alegaciones sobre los actos de los apelados como miembros de la Junta de Directores de la Asociación de Titulares. No obstante, en nuestro ordenamiento jurídico, los actos y transacciones realizados por la Junta de Directores de la Asociación de Titulares se consideran llevados a cabo por la propia Asociación de Titulares, ya que estos actúan en su

---

[17] Véase, Apéndice del apelante, anejo 5, págs. 52-53.
[18] Véase, Apéndice del apelante, anejo 5, págs. 54 y 65.

representación. Por ende, los miembros de la Junta de Directores de la Asociación de Titulares no están obligados en su carácter personal.

No debemos olvidar que, en Puerto Rico, la Asociación de Titulares es una persona jurídica con capacidad de demandar y ser demanda. De manera que, conforme al Derecho aplicable, es la Asociación de Titulares quien podría ser forzada a responder por cualquier violación a las obligaciones contraídas. Asimismo, concluimos que el foro primario no erró al desestimar la primera, segunda y tercera causa de acción de acción de la demanda contra tercero contra los apelados, toda vez que la Asociación de Titulares es la titular del derecho a exigir el cumplimiento del deber de fiducia de sus directores.

En fin, aun tomando como ciertos todos los hechos debidamente expuestos en la demanda contra tercero e interpretándolos de la manera más liberalmente posible a favor del apelante, no podemos deducir que haya presentado una reclamación que justifique la concesión de un remedio. Procede, por tanto, confirmar el dictamen apelado.

**-IV-**

Por los fundamentos previamente expuestos, se **confirma** la *Sentencia Parcial* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones